USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
LARRY LEVI,

        Plaintiff,

        -against-

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

        Defendant/Third-Party Plaintiff,

        -against-

HENRY VARGAS, VICTOR VARGAS,
VARGAS REALTY GROUP, LLC,
VANGUARD TITLE AGENCY, INC., and
PETER SKYLLAS,

        Third-party Defendants
------------------------------------------------------------------x

09 Civ. 8012 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    Henry Vargas, purportedly an officer of 2141 MD Jr. LLC, sold Pete Skyllas an option to purchase Vargas's purported interest in 2141 MD. As part of that transaction, described in more detail below, Vargas gave Skyllas a $1 million mortgage note on behalf of 2141 MD, secured by a mortgage on a commercial property on Lenox Avenue in Manhattan that 2141 MD owned. Skyllas later assigned the note and mortgage to plaintiff Larry Levi. In connection with that assignment, Levi purchased from defendant Commonwealth Land Title Insurance Company a mortgage title insurance policy in which Commonwealth promised, *inter alia*, to indemnify Levi for loss resulting if the lien on the property represented by the mortgage proved unenforceable due to fraud. Levi alleges in this action that Commonwealth breached that contractual obligation. Levi has now moved for summary judgment in his favor.

When executing the mortgage, Vargas claimed that he owned a sixty percent stake in 2141 MD. In reality, he did not. These facts are undisputed and form the foundation of Levi's summary judgment motion. Levi argues that Vargas's acts render the lien on the Lenox Avenue property unenforceable due to fraud and that Commonwealth must reimburse him for the complete loss on the mortgage note he suffered as a result. As set forth below, Levi has indeed established that there are no genuine disputes of material fact and that he is therefore entitled to judgment as a matter of law.

## I. BACKGROUND

### A. The Vargas-Skyllas Option Agreement

2141 MD Jr. LLC is a limited liability corporation that owns the building at 21-41 Lenox Avenue. (Ex. DD.[1]) On May 14, 2008, Henry Vargas sold Pete Skyllas an option to purchase Vargas's purported sixty-percent stake in 2141 MD. (Option Agreement, Ex. H.) The option had a 120-day term. (*Id.* at ¶ 3.A.) In the Option Agreement, Vargas acknowledges previously receiving $700,000 from Skyllas, which was to be credited to the $4.8 million purchase price of Vargas's stake. (*Id.* at ¶¶ 5.B, 5.C.) The Option Agreement further provided that Skyllas was to pay an additional $300,000 of the purchase price by June 13, 2008, (*id.* at ¶ 4.B), bringing the total prepayment to $1 million. Whether Skyllas actually paid $1 million is addressed *infra*, Section II.A.1.

Per their agreement, Skyllas was entitled to repayment of the $1 million, without interest, if he declined to purchase Vargas's ownership interest in 2141 MD. (*Id.* at ¶¶ 4.A, 5.D(ii).) Vargas would repay the $1 million pursuant to a mortgage note, with a mortgage on the Lenox Avenue property securing the indebtedness. (*Id.* at ¶ 5.D(ii); *see id.* at ¶¶ 1.P, 1.Q, 1.X.) The

---

[1]  Unless otherwise noted, all cited exhibits accompany the declarations of William Charron, Esq. dated August 20, 2010 and September 24, 2010.

2

mortgage and mortgage note were to be executed in conjunction with the Option Agreement and thereafter held in escrow. (*Id.* at ¶ 7.A.) The escrow agent would release the mortgage and mortgage note to Skyllas for recording if Skyllas declined to exercise the option. (*Id.* at ¶ 12.B.)

The mortgage, mortgage note, and Option Agreement were all executed on May 14, 2008. (Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") at ¶ 5; Def.'s Counter-statement to Pl.'s Rule 56.1 Statement ("Def.'s 56.1") at ¶ 16.) 2141 MD is the mortgagor, Skyllas the mortgagee, and 21-41 Lenox Avenue the mortgaged property. (Ex. E.) Vargas purported to execute the mortgage on behalf of 2141 MD. (*Id.*) The mortgage originally bore the effective date of September 11, 2008, (*id.*), the date the option was to expire. Both the mortgage and the note stated that 2141 MD was to pay $1 million to Skyllas in one lump sum on September 10, 2009. (*Id.*; Ex. I to Decl. of John Cannistraci dated Sept. 15, 2010 ("Cannistraci Decl.").)

Skyllas's attorney, Jeremy Roth, informed Vargas's attorney on July 14 that Skyllas would not be exercising the option. (Ex. J.) Because Vargas's attorney was also the escrow agent for the option agreement, Roth requested the release of the mortgage and mortgage note to Skyllas for recording. (*Id.*) Vargas's attorney complied with that request on July 16 and explained to Roth that the mortgage and note should be re-dated to be effective as of July 14, 2008 to reflect the early termination of the option agreement. (Ex. K.)

B. The Skyllas-Levi Assignment

In an agreement dated July 21, 2008, Skyllas assigned all of his rights under the mortgage and mortgage note to plaintiff Larry Levi for $728,000.[2] (Pl.'s 56.1 at ¶ 13; Def.'s 56.1 at ¶ 13;

---

[2] Commonwealth harps on Skyllas's deposition testimony stating that he assigned Levi the Option Agreement, not the mortgage and note, (Dep. of Pete Skyllas dated Mar. 18, 2010 ("Skyllas Dep.") at 193:13-195:4, 213:10-12, Ex. A to Cannistraci Decl.), even though it is clear Skyllas was mistaken. Substantial, uncontradicted documentary evidence—correspondence between Skyllas's attorney and Vargas's attorney concerning release of the

3

Ex. L.). At the closing, Commonwealth, through its agent Vanguard Title Agency, Inc., issued a $1 million "Loan Policy of Title Insurance" to Levi insuring 2141 MD's mortgage to Skyllas that was assigned to Levi. (Pl.'s 56.1 at ¶ 17; Def.'s 56.1 at ¶ 17; *see* Commonwealth Policy, Ex. A.) The policy indicated that the mortgage was junior to a $2.35 million dollar mortgage taken out on the property in 1997. (Commonwealth Policy at Schedule B.) The policy, *inter alia*, provided for indemnification for a loss resulting from the invalidity of the mortgage lien that in turn resulted from "forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation." (*Id.* at Covered Risks ¶ 9(a).)

### C. Levi's Claim on the Policy

On January 2, 2009, Levi made a claim on his mortgage title insurance policy. (Ex. U.) His attorney's letter to Commonwealth stated that Skyllas and the Manhattan District Attorney's office had informed Levi that the mortgage was a fraud. (*Id.*) Though Vargas had held himself out as possessing both a majority stake in 2141 MD and the authority to mortgage its property, neither was the case. (Pl.'s 56.1 at ¶¶ 4, 19; Def.'s 56.1 at ¶¶ 4, 19; Ex. DD.) In the ensuing months Levi supplied documentation of the underlying transactions to Commonwealth and made repeated demands that the insurer pay his $1 million claim. (Pl.'s 56.1 at ¶¶ 25-30; Def.'s 56.1 at ¶¶ 25-30.)

On September 16, Commonwealth informed Levi's litigation counsel that the attorney it had retained to investigate the claim "has confirmed what Mr. Katz [Levi's transaction counsel] reported to the Company earlier – that Henry Vargas was not properly authorized to execute the

---

mortgage from escrow, (Exs. J, K), the contract of assignment between Skyllas and Levi, (Ex. L), the Commonwealth insurance policy, (Ex. A), and New York City property records Commonwealth offers, (Ex. L to Cannistraci Decl.)—establish that Levi was assigned the mortgage, not the option agreement.

The insurer also suggests that no assignment occurred because Levi's attorney, Michael Katz, executed the assignment without a power of attorney from Levi granting him authority to do so. (*See* Def.'s Mem. in Opp. to Summ. J. ("Def.'s Opp.") at 9.) This argument does not stand scrutiny: Levi and Katz agree that Katz has long had authority to sign contracts on Levi's behalf. (Dep. of Michael Katz dated Mar. 31, 2010 at 106:11-16, Ex. OO; Reply Decl. of Larry Levi at ¶ 2, Ex. NN.)

4

mortgage on behalf of 21-41 MD Jr, LLC to Peter Skyllas, which mortgage was assigned to Mr. Levi and insured as a second lien on the property under our title policy." (Ex. S.) The company indicated it was prepared to bring litigation in Levi's name and for his behalf "against Henry Vargas and Vanguard Title agency, in an effort to mitigate the loss to our insured arising from Mr. Vargas' lack of authority to execute the insured mortgage." (*Id.*)

### D. This Action

Unsatisfied with Commonwealth's response, Levi initiated this diversity action alleging that Commonwealth breached its insurance contract by failing to honor his claim. Commonwealth answered with general denials and filed a third-party complaint against Henry Vargas, Victor Vargas, Vargas Realty Group, LLC, and Vanguard Title Agency, Inc. that advances various theories as to why these parties must reimburse Commonwealth in the event it is liable to Levi. Now before the Court is Levi's motion for summary judgment. New York law governs Levi's claim for breach of the policy. (*See* Commonwealth Policy at Condition 16(a).)

## II. DISCUSSION

Summary judgment is appropriate only if the moving party demonstrates that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

A. <u>Commonwealth is liable under the policy</u>

The policy covers the risk of "the invalidity or unenforceability of the lien of the Insured Mortgage" resulting from "forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation." (Commonwealth Policy at Covered Risks 9(a).) Vargas fraudulently executed the lien on behalf of an entity he had no authority to bind. As a result, the lien on the Lenox Avenue property is unenforceable. *See, e.g., Hoffman v. Kraus*, 260 A.D.2d 435, 436 (2d Dep't 1999); *Greenpoint Bank v. Parissi*, 256 A.D.2d 548, 549 (2d Dep't 1998). A plainly covered risk plainly occurred.

Commonwealth, however, disclaims coverage on two theories. The first is that the cause of Levi's loss is not Vargas's fraud but rather an uninsured risk—a defect in the mortgage debt, described below. Its second argument is that Levi does not qualify for coverage pursuant to the policy exclusion for "[d]efects, liens, encumbrances, adverse claims, or other matters . . . created, suffered, assumed, or agreed to by the insured Claimant." (Commonwealth Policy at Exclusions 3(a).)[3]

Levi incorrectly maintains that Commonwealth either waived these arguments or should be estopped from asserting them. The doctrine of waiver is inapplicable to Commonwealth's defenses that Levi's claim is beyond the policy's coverage. *See Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698-99 (1980). And while an insurer can nonetheless be estopped from raising such a defense, the requirements of estoppel—an act inconsistent with a lack of coverage

---

[3] Commonwealth briefly alludes to the possibility that Levi violated the policy's duty of cooperation by refusing to let Commonwealth bring a lawsuit against Vargas and Vanguard Title in Levi's name. (*See* Commonwealth Policy at Condition 6(a).) To disclaim coverage on a theory of noncooperation by the insured, "the insurer must establish that it diligently acted in seeking the cooperation of the insured, that its efforts were reasonably calculated to bring about the insured's cooperation, and that the insured's attitude was one of willful and avowed obstruction." *State Farm Indem. Co. v. Moore*, 58 A.D.3d 429, 430 (1st Dep't 2009) (internal quotation marks omitted). This is a "very heavy burden." *Id.* Commonwealth's fleeting reference to the subject of noncooperation, (*see* Def.'s Opp. at 10), comes nowhere close to meeting that burden. Nor does Commonwealth demonstrate any prejudice resulting from the alleged noncooperation, which the policy requires it to do before disclaiming coverage on this ground, (*see* Commonwealth Policy at Condition 6(a)).

by the insurer, and detrimental reliance by the insured, see *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 95 (2d Cir. 2002)—are not present here. The Court accordingly turns to the merits of Commonwealth's defenses.

### 1. *An uninsured risk did not cause Levi's loss*

Unlike the risk of defective execution of the mortgage lien, the risk that a mortgage lien is unenforceable because there is no valid debt to collect is not typically covered by title insurance. *See Fidelity Nat. Title Ins. Co. of New York v. Consumer Home Mortg., Inc.*, 272 A.D.2d 512, 514 (2d Dep't 2000); *Gerrold v. Penn Title Ins. Co.*, 637 A.2d 1293, 1295 (N.J. Super. Ct. App. Div. 1994). Drawing on this distinction, Commonwealth argues that Vargas's fraud did not cause Levi's loss. It maintains that even if Vargas had been authorized to grant the mortgage, the mortgage would still be unenforceable on account of the supposed invalidity of the mortgage debt. It posits two defects to the debt accompanying the mortgage on the Lenox Avenue property: 1) the alleged failure of Skyllas to pay the loan proceeds to Vargas and 2) the failure of 2141 MD to receive any loan proceeds.

The first proposed defect lacks a basis in evidence. Levi has adduced direct evidence of payment. Skyllas testified at his deposition that he paid Vargas $1 million in multiple installments and mostly in cash. (Dep. of Pete Skyllas dated Mar. 18, 2010 ("Skyllas Dep.") at 74:24-76:19, Ex. G.) He testified under oath that he paid $700,000 in a 12-month span leading up to the execution of the Option Agreement, and paid the remaining $300,000 afterward. (*Id.* at 144:22-145:19.) The Option Agreement states that $700,000 had already been paid. (Option Agreement at ¶ 5.C.) And a notarized document dated July 10, 2008 signed by Skyllas and Vargas states that the remaining $300,000 had been paid. (Ex. I.) This evidence admits of no ambiguity or inference of nonpayment, and there is no evidence in the record to contradict it.

7

Commonwealth instead attacks Skyllas's credibility and asserts that his account of a $1 million cash transaction, where $700,000 was paid before any written agreement was entered into, should not be believed. These are arguments regarding Skyllas's credibility, not evidence; contentions without evidence cannot defeat summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Island Software & Comp. Serv., Inc. v. Microsoft Corp.* 413 F.3d 257, 261 (2d Cir. 2005). The lone piece of evidence Commonwealth cites—a contract of sale for the Lenox Avenue property from September 2008 executed by Vargas and Skyllas on behalf of 2141 MD, (Ex. GG)—does not contradict the evidence of payment or permit an inference of nonpayment. Commonwealth has simply failed to raise a genuine dispute as to whether Skyllas paid Vargas.

The second proposed defect in the debt—the fact that 2141 MD did not receive the loan proceeds—lacks a basis in law. If Vargas had been the majority owner and manager of 2141 MD, as Commonwealth assumes for the sake of argument, then Vargas would have incurred a personal debt via the Option Agreement and simultaneously had 2141 MD guarantee that debt via the mortgage. That 2141 MD did not receive the loan proceeds in this arrangement would not preclude enforcement of the mortgage—a mortgage granted by a mortgagor to secure someone else's debt is valid in New York. *See Amherst Factors, Inc. v. Kochenburger*, 4 N.Y.2d 203, 207-08 (1958); *Reliance Ins. Co. v. Brown*, 59 A.D.2d 968, 969-70 (3d Dep't 1977); *Parr v. Reiner*, 133 Misc. 2d 914, 916 (N.Y. Sup. Ct. 1986), *aff'd* 143 A.D. 2d 427 (2d Dep't 1988); *cf. Consumers Union of U.S., Inc. v. Campbell*, Nos. 88 Civ. 7980, 89 Civ. 4704, 1989 WL 304762, at *5 n.5 (S.D.N.Y. Nov. 16, 1989) ("It is settled law in New York that a contract of guaranty entered into concurrently with the principal obligation is supported by the same consideration

which underlies the principal contract."). To illustrate this principle, *Restatement (Third) of Property: Mortgages* provides an example exceedingly similar to the present case:

> A is the sole stockholder of Corporation B. A borrows money from Bank for personal purposes, and A causes Corporation B to execute a mortgage on certain of its business real estate to secure the loan. The mortgage is enforceable notwithstanding that Corporation B receives no benefit from the loan.

*Restatement (Third) of Property: Mortgages* § 1.3 illus. 2 (citing *Reliance Insurance*, 59 A.D.2d at 969-70). If Vargas had authority to grant the mortgage, 2141 MD's nonreceipt of the loan proceeds simply would not impair the enforceability of the mortgage.

Because there is no genuine issue concerning a defect in the debt independent of Vargas's fraud, Commonwealth's attempt to disclaim coverage on this basis is unavailing.

### 2. The policy does not exclude Levi's loss from coverage

Commonwealth's other attempt to disclaim coverage, which relies on the exclusion for defects "created, suffered, assumed, or agreed to by the insured Claimant," (Commonwealth Policy at Exclusion 3(a)), also fails. The primary thrust of Commonwealth's argument is that Levi, either directly or indirectly through Skyllas, knew of or was responsible for the asserted defects in the mortgage debt. The absence of a genuine issue as to a defect in the debt disposes of this point. Commonwealth also suggests Levi had knowledge of or was complicit in Vargas's fraud. However, Levi's sworn testimony at his deposition was that he never had any dealings with Vargas. (Dep. of Larry Levi dated Mar. 22, 1010 at 63:2-14, 77:10-24, Ex. M.) No evidence contradicts this. Commonwealth points to a June 27, 2008 e-mail from Skyllas's attorney to Vargas's attorney indicating that Vargas met with an unnamed potential investor. (Ex. H to Cannistraci Decl.) Commonwealth presumes this to be Levi, but as revealed in subsequent     e-mail correspondence between the lawyers, (*id.*), and as confirmed by Skyllas's attorney, (Reply Decl. of Jeremy Roth dated Sept. 23, 2010 at ¶ 2, Ex. MM), it was not.

9

Commonwealth's case for showing that Levi participated in the fraud is purely speculative. It does not present a triable issue of fact.

B. Damages

A title insurer must indemnify the insured for the actual loss, within the policy limit, stemming from the defect in the mortgage. *Grunberger v. Iseson*, 75 A.D.2d 329, 331 (1st Dep't 1980). The actual loss of a holder of a junior lien, such as Levi, is the lesser of 1) the unpaid principal on the mortgage debt and 2) the mortgagor's equity in the property, i.e., Levi's recovery if he had been able to foreclose. *See id.*; *Chrysler First Fin. Servs. Corp. of Am. v. Chicago Title Ins. Co.*, 226 A.D.2d 183, 184 (1st Dep't 1996). Levi has presented uncontroverted evidence that the unpaid principal on the debt is $1 million, (Ex. GG), and that the equity in the Lenox Avenue property was in excess of $1 million, since the property was appraised at over $4 million, (Ex. HH), and the amount due on the mortgage superior to Levi's was $2.35 million at a maximum, (Commonwealth Policy at Schedule B; *see also* Ex. DD.). It follows that Levi's actual loss is $1 million—the unpaid principal on the mortgage debt—and the full extent of coverage under Levi's insurance policy. Thus, Levi's damages are $1 million, a point Commonwealth does not contest.

C. Prejudgment Interest

The parties dispute both the availability and the accrual date of prejudgment interest. In regard to availability, the law supports Levi's claim to prejudgment interest. Pursuant to New York C.P.L.R. 5001, prejudgment interest is awarded in an action on breach of contract, including an insured's suit for breach of a title insurance policy. *See L. Smirlock Realty Corp. v. Title Guarantee Co.*, 63 N.Y.2d 955, 958 (1984); *see also Varda, Inc. v. Ins. Co. of N. Am.*, 45

F.3d 634, 640 (2d Cir. 1995). Commonwealth contends that the following policy provision nevertheless prevents an award of prejudgment interest:

> In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title or to the lien of the Insured Mortgage, as insured.

(Commonwealth Policy at Condition 9(b).) This provision makes no mention of prejudgment interest; it defines the timing of liability, not its extent. The Court accordingly does not construe this provision to eliminate Levi's statutory right to prejudgment interest. *See Varda*, 45 F.3d at 640 (policy provision that addressed only when the insurer should pay, but not how much it should pay, did not preclude an award of prejudgment interest pursuant to CPLR 5001).

Prejudgment interest accrues "from the earliest ascertainable date the cause of action existed." N.Y. CPLR 5001(b). Commonwealth suggests that interest cannot accrue until August 2010, when Levi supposedly perfected his insurance claim by submitting a supplemental proof of loss.[4] Levi asserts that interest should accrue from January 2009, when he made his claim upon Commonwealth. Neither party cites any authority for its position. The Court's own research indicates that the closest authority is the First Department's decision in *Chrysler First Financial Services*, which held that because title insurance is a contract for indemnification, the insured's cause of action accrues when it suffers an actual loss as a result of the defect in his lien. *See* 226 A.D.2d at 184.

Applying that principle here, the Court determines that September 11, 2009 is the appropriate starting point for prejudgment interest as that is the date of Levi's actual loss. Levi

---

[4] The Commonwealth policy does not require the insured claimant to submit a proof of loss for all claims. It only requires a proof of loss if the company requests one, and there is no time restriction on when that request can be made. (Commonwealth Policy at Condition 4.) To permit the proof of loss date to trigger prejudgment interest in this scenario would give the insurer significant control over its interest obligation and thereby invite abuse. *Cf. L. Smirlock Realty Corp. v. Title Guarantee Co.*, 97 A.D.2d 208, 242 (2d Dep't 1983), *modified on other grounds*, 63 N.Y.2d 955 (1984).

11

suffered no loss prior to that date, since his loss could not occur before the mortgage debt went into default, and that debt was not due until September 10. *See Falmouth Nat. Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1063 (1st Cir. 1990). But by September 11, 2009, there had been a default in the debt owed Levi and the lien he had as security for that debt was already known to be unenforceable. (Indeed, only five days later Commonwealth wrote to Levi to confirm its finding that Vargas was not properly authorized to execute the mortgage, (Ex. S).) The Court therefore concludes that Levi suffered his loss on September 11, 2009, so it is from that date that interest accrues. The interest rate is nine percent per annum. N.Y. C.P.L.R. 5004.

### D. Attorneys' Fees

Levi also seeks an award of attorneys' fees. Commonwealth has not "acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and therefore a discretionary award of attorneys' fees is not warranted. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (internal quotation marks omitted).

### III. CONCLUSION

Because Commonwealth breached its contractual obligation to indemnify Levi for loss resulting from invalidity of the mortgage lien due to fraud, Levi's motion for summary judgment is granted in favor of Levi for $1 million, plus prejudgment interest of nine percent per year from September 11, 2009 until judgment is entered.

Dated: New York, New York
September 30, 2011

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.