UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY LEVI,

     Plaintiff,

          -against-

COMMONWEALTH LAND TITLE
INSURANCE CO.,

     Defendant–Third Party Plaintiff,

          -against-

HENRY VARGAS, VARGAS REALTY
GROUP, LLC, VANGUARD TITLE
AGENCY, INC., PETER SKYLLAS, and
EMELY OSPINO, as Administratrix of the
Estate of VICTOR VARGAS,

     Third-Party Defendants.

09 Civ. 8012 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

     This fraud action is based upon Henry Vargas's false representation that he was the majority owner of an entity—2141 MD, Jr., LLC ("2141 MD")—that owned property located at 21-41 Lenox Avenue in New York City ("2141 Lenox Avenue"), when in fact Vargas had no such interest whatsoever. Posing as the managing member of 2141 MD, Vargas assigned a fraudulent mortgage to Peter Skyllas in exchange for $1 million. Skyllas then transferred the mortgage to Larry Levi, who purchased a title insurance policy on the property from Commonwealth Land Title Insurance Co. When Levi discovered that the mortgage was worthless, he sued Commonwealth. This Court granted summary judgment for the full amount of the policy in Levi's favor in a September 2011 Opinion and Order, *see generally Levi v. Commonwealth Land Title Ins. Co.*, No. 09 Civ. 8012 (SHS), 2011 WL 4542904 (S.D.N.Y. Sept. 30, 2011), and in March 2012, Commonwealth paid the judgment.

     Commonwealth, meanwhile, instituted a third-party suit against the agent it hired to investigate the title, Vanguard Title Agency, Inc.; Vargas; Skyllas; Vargas's company, Vargas Realty Group, LLC; and Vargas's now-deceased father, Victor

Vargas.[1] The only third-party defendant remaining in the case is Vargas; every other third-party defendant has either settled with Commonwealth or had a default judgment entered against it. Vargas is currently incarcerated after pleading guilty to charges of attempted grand larceny and second-degree forgery in New York Supreme Court, New York County. The conduct for which Vargas was convicted arises from the same scheme underlying Commonwealth's claims.

Commonwealth now moves for summary judgment, asserting that undisputed facts demonstrate that Vargas is liable to it for the amount it paid Levi under three alternative legal theories: fraud, conspiracy to commit fraud, and as assignee of the note and mortgage pursuant to the agreement between Commonwealth and Levi in satisfaction of the judgment. Commonwealth also seeks punitive damages. Vargas—who is defending this action pro se—raises a number of challenges to Commonwealth's factual and legal assertions.

For the following reasons, the Court finds that Vargas has failed to demonstrate any genuine dispute of material fact and that the undisputed facts support the entry of summary judgment in Commonwealth's favor on its fraud claim. The Court declines to award punitive damages.

## I.  FACTS

The following facts are supported by the uncontroverted documentary evidence in this record.

### A.  The 2141 Lenox Avenue Mortgage

In 2007, Henry Vargas, through his company Vargas Realty Group, entered into a contract with Manuel Duran, Jr.—the true owner of 2141 MD—to purchase property that entity owned at 2141 Lenox Avenue. (*People v. Vargas*, Indictment No. 4987/09, Plea Allocution dated Apr. 9, 2010 ("Plea Allocution") at 9-10, Ex. J to Decl. of David William Tyler, Esq. dated May 2, 2013; Contract of Sale, Ex. Q to Tyler Decl.) Rather than completing the purchase, however, Vargas used the information gained about 2141 MD to draft an operating agreement for the corporation falsely designating himself as 60 percent owner; his father, Victor Vargas, as a 30 percent owner; and Duran as a 10 percent owner. (Operating Agreement, Ex. G to Tyler Decl.; Plea Allocution 10.)

Under the false premise that he was the majority shareholder of 2141 MD, Vargas entered into a May 2008 agreement with Peter Skyllas in which Skyllas paid

---

[1] Unless otherwise specified, all references to "Vargas" refer to defendant Henry Vargas.

$1 million, in multiple installments,[2] for the option to purchase Vargas's purported—but actually nonexistent—interest in 2141 MD for $4.8 million. (Option Agreement, Ex. K to Tyler Decl.; Dep. of Peter Skyllas dated Mar. 18, 2010 75:3-11, 76:3-14, Ex. M to Tyler Decl.) In the event Skyllas declined to exercise the option, he was to be repaid $1 million in accordance with the terms of a mortgage and mortgage note executed contemporaneously with the option agreement. (Option Agreement ¶ 5(D)(ii); Mortgage, Ex. F to Tyler Decl.) The purported mortgagor was 2141 MD; Skyllas was the mortgagee; and 2141 Lenox Avenue was the mortgaged property.

On July 14, 2008, Skyllas elected not to exercise the option to purchase Vargas's claimed ownership stake in 2141 MD. *Levi*, 2011 WL 4542904, at *2. Accordingly, Vargas's attorney released the mortgage and note, which had been held in escrow, to Skyllas. *Id.* According to its terms, 2141 MD was to pay Skyllas $1 million on September 10, 2009 in satisfaction of the debt. (Mortgage Note, Ex. F to Tyler Decl.) Skyllas thereafter recorded the mortgage.

Also on July 14, Skyllas assigned the mortgage to plaintiff Larry Levi in exchange for a payment of $728,000. (Ex. O to Tyler Decl.) In connection with the purchase of this mortgage, Levi acquired a $1 million title insurance policy from Commonwealth, issued through its policy issuing agent, Vanguard. (Title Insurance Policy, Ex. D to Tyler Decl.) As part of the title issuance process, Vargas executed an affidavit of title (the "title affidavit")—including his notarized signature—on July 21, 2008 in which he affirmed that he was the managing member of 2141 MD; that the company was mortgaging the 2141 Lenox Avenue property to Levi; that "[t]he Article of Organization of [2141 MD] was filed with the New York Secretary of State"; that "[t]here has been no change in the composition of [2141 MD] and that the Operating Agreement has not been amended nor repealed and remains in full force"; that the "affidavit [was] executed to induce Commonwealth to issue its policy of title insurance . . . knowing that it [would] rely upon the statements"; and that 2141 MD would "indemnify Commonwealth for any loss, claim, costs, or damages, which may ensue from reliance upon [those] statements." (Title Affidavit, Ex. R to Tyler Decl.) The title policy insured Levi against risks including invalidity of the mortgage lien due to, inter alia, "forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation." (Title Insurance Policy ¶ 9(a).)

### B.   Levi's Action against Commonwealth

In January 2009, Levi filed a claim with Commonwealth, seeking $1 million. (Ltr. from Michael Katz, Esq. dated Jan. 2, 2009, Ex. T to Tyler Decl.) He made this claim

---

[2] The option agreement states that Skyllas had paid $700,000 prior to its execution. (Option Agreement ¶ 5(C).) On July 10, 2008, Vargas executed an affidavit acknowledging his receipt of an additional $300,000 from Skyllas. (Ex. L to Tyler Decl.)

after learning from Skyllas and the Manhattan District Attorney's Office that the mortgage was fraudulent. (*Id.*) Commonwealth offered to bring suit against Vargas and Vanguard on Levi's behalf. *Levi*, 2011 WL 4542904, at *3. Levi chose instead to commence an action based on diversity of citizenship against Commonwealth in this Court. *Id.* Commonwealth, in turn, filed a third-party complaint against Vargas and the other third-party defendants, also invoking diversity jurisdiction.

In a September 2011 Opinion and Order, this Court granted summary judgment in favor of Levi against Commonwealth. It found that, because Vargas had no authority to bind 2141 MD, the mortgage in which he purported to do so was unenforceable and fell within the policy's coverage of unenforceability due to "forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation." *Levi*, 2011 WL 4542904, at *3. It also found Commonwealth's affirmative defenses—one of which was that the lack of a valid debt to collect, rather than Vargas's fraud, caused the loss—to be without merit. *Id.* at *4-5. Finally, the Court judged Levi's damages to be the $1 million in unpaid principal on the debt— also the full extent of the title insurance policy—plus prejudgment interest running from the date on which the mortgage debt went into default. *Id.* at *6-7.

Commonwealth paid Levi $1,122,500 in satisfaction of the judgment pursuant to a March 2012 agreement. (Settlement Agreement, Ex. U to Tyler Decl.) That agreement also provided that "[i]n consideration of the payment by Commonwealth to Levi of the Settlement Amount, Levi . . . assigns to Commonwealth all of his right, title, and interest in . . . the Mortgage and all of his rights against any third parties . . . . [and] acknowledges and agrees that Commonwealth shall be subrogated to all of Levi's rights under the Mortgage and the Note." (*Id.* at ¶ 2(c).)

### C. Criminal Proceedings against Vargas

As Levi discovered, the Manhattan District Attorney's Office indicted Vargas in 2009 on a number of charges associated with his misrepresentations regarding 2141 MD and the 2141 Lenox Avenue property. In April 2010, Vargas pleaded guilty in New York Supreme Court, New York County to attempted grand larceny in the first degree and forgery in the second degree. (Plea Allocation at 3.) In a statement made under oath in open court, Vargas admitted to the following:

> In the fall of 2007, I began misrepresenting to others that I owned or controlled an entity called 2141 MD Jr. LLC, which in turn owned a building at 2141 Lenox Avenue . . . . I had entered into a contract with the LLC's true owner, Manuel Durand, Jr. in August 2007. Based on that deal, I knew that the building was owned by the LLC and Mr. Durand. To convince people that I owned the LLC and the [] building and to further my scheme to steal and attempt to steal money and other property, I forged an operating agreement for the LLC that made it appear that I owned 60 percent of it, my

father owned 30 percent and Mr. Durand, the true owner, the true 100 percent owner owned only 10 percent and had contributed no money to the LLC. I knew that I had no permission or authority from Mr. Durand to create that document or form his signature. . . . As part of my ongoing scheme, I lied to, and attempted to defraud, numerous people by telling them I owned the [] building.

(Plea Allocution at 9-11.) Vargas was sentenced to a prison term of five-and-one-half to ten years, which he is currently serving. (*People v. Vargas*, Indictment No. 4987/09, Sentencing Tr. dated Apr. 21, 2010 at 3, Ex. J to Tyler Decl.)

## II.  ANALYSIS

Commonwealth moves for judgment in its favor pursuant to Federal Rule of Civil Procedure 56 on the grounds that no genuine dispute of fact exists and that Vargas is liable to it based on three alternative theories: fraud, conspiracy to commit fraud, and that Commonwealth is entitled to any relief Levi would have been entitled to as Levi's subrogee. Commonwealth also alleges it is entitled to punitive damages.

Vargas vigorously disputes multiple of Commonwealth's factual and legal assertions. The Court provides "special solicitude" to pro se litigants such as Vargas—particularly those who are incarcerated—and, as such, it construes Vargas's submissions liberally in his favor. *See, e.g., Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

### A.  Summary Judgment Standard

"[S]ummary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998); *accord Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 414-15 (S.D.N.Y. 2012). In determining whether a genuine dispute of material fact exists, courts must "resolve all ambiguities and draw all permissible influences in favor of the party against whom summary judgment is sought." *Patterson v. City of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). That said, even a pro se party seeking to demonstrate a genuine issue of material fact "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." *D'Amico*, 132 F.3d at 149; *accord Self v. Dep't of Educ. of the City of N.Y.*, 844 F. Supp. 2d 428, 434 (S.D.N.Y. 2012). Furthermore, "a party opposing summary judgment does not create a triable issue by denying his previously sworn statements." *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998).

## B.   No Genuine Issue of Material Fact Exists

Vargas claims that multiple factual disputes exist. According to his version of events, he legitimately intended to purchase and develop the property at 2141 Lenox Avenue; Skyllas facilitated the forgery of Vargas's signature on multiple documents, including the title affidavit; and Skyllas, rather than Vargas, was the culpable actor in this fraudulent scheme. Vargas argues that evidence he has provided the Court supports this alternative explanation and creates genuine issues of material fact, precluding summary judgment.

Vargas's story, however, suffers from two fundamental defects: (1) Vargas's criminal conviction and his own sworn statements contradict the core of his claims, *see Heil*, 147 F.3d at 110, and (2) the evidence he provides neither contravenes the documentary evidence submitted by Commonwealth nor supports Vargas's version of the facts, *see D'Amico*, 132 F.3d at 149.

### 1.   *The Preclusive Effect of Vargas's Criminal Conviction*

As to the first point, Commonwealth asserts that Vargas should be collaterally estopped from challenging the factual admissions in his guilty plea—particularly the admission that he created a false operating agreement for 2141 MD. "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In New York, prior determinations in criminal cases are given collateral estoppel effect in subsequent civil cases. *S.T. Grand, Inc. v. City of N.Y.*, 32 N.Y.2d 300, 304-05 (1973).

For collateral estoppel—also known as issue preclusion—to apply, the Court must find that "the issue as to which preclusion is sought [is] identical with the issue decided in the prior proceeding, that the issue [was] necessarily decided in the prior proceeding, and that the litigant who will be held precluded in the present proceeding [had] had a full and fair opportunity to litigate the issue in the prior proceeding." *Capital Tel. Co. v. Pattersonville Tel. Co.*, 56 N.Y.2d 11, 17 (1982); *accord Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991). The burden of establishing that an issue is identical and was necessarily decided in a prior proceeding rests with the proponent of preclusion; the burden of demonstrating lack of a full and fair opportunity to litigate falls upon its opponent. *Capital Tel. Co.*, 56 N.Y.2d at 14.

When a prior criminal judgment is based on a guilty plea, New York courts give preclusive effect to those issues that were essential to the state court's acceptance of the plea, and therefore necessarily decided in that proceeding. *See William Floyd Union Free Sch. Dist. v. Wright*, 61 A.D.3d 856, 858 (2d Dep't 2009); *In re Diana N.*, 34 A.D.3d 1058, 1059 (3d Dep't 2006); *Colby v. Crocitto*, 207 A.D.2d 764, 765 (2d Dep't 1994); *Merchants Mut. Ins. Co. v. Arzillo*, 98 A.D.2d 495, 504 (2d Dep't 1984) ("[A]mple authority exists for the general proposition that a guilty plea is equivalent to a

conviction after trial for issue preclusion purposes and that a guilty plea precludes relitigation in a subsequent civil action of all issues necessarily determined by the conviction."). The Court must therefore examine the criminal record to determine whether the facts asserted to be subject to estoppel were essential to the acceptance of the plea, given that none of the charges in the indictment were actually tried. *Cf. Goodridge v. Harvey Grp. Inc.*, 728 F. Supp. 275, 279 (S.D.N.Y. 1990) (explaining, in the context of federal collateral estoppel law, the importance of determining which issues were necessarily decided in a prior proceeding in which a party entered a plea of guilty).

Based on these principles, Vargas is estopped from challenging his admission that he used information gained from Duran for the purpose of creating a fraudulent operating agreement for 2141 MD. The issues are clearly the same. The Court further finds that this admission was necessary and essential to the New York Supreme Court's acceptance of Vargas's plea of guilty to forgery in the second degree. That felony requires a showing that

> with intent to defraud, deceive or injure another, [the defendant] falsely makes, completes or alters a written instrument which is or purports to be . . . [a] contract, assignment, . . . or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or . . . [a] public record, or an instrument filed or required or authorized by law to be filed in or with a public office or public servant.

N.Y. Penal Law § 170.10. Finally, Vargas has raised no genuine concern as to his full and fair opportunity to litigate his criminal case. He is therefore precluded from contradicting his admission under oath that he knowingly created the false operating agreement designating him 60 percent owner of 2141 MD. This determination, however, settles only one claimed factual dispute.[3]

### 2.   *Other Alleged Factual Disputes*

In addition to being bound to his admission that he created the forged operating agreement, Vargas must contend with sworn written representations he made in the title affidavit, which contradict his current factual assertions. His notarized signature

---

[3] Vargas represents that his conviction is currently under appeal and argues that his sworn plea allocution should therefore be discounted. The pendency of an appeal, however, does not prevent the use of a criminal judgment to collaterally estop a convicted person from relitigating an issue necessarily decided against him. *See Parkhurst v. Berdell*, 110 N.Y. 386, 392 (1888) ("[T]he appeal did not suspend the operation of the judgment as an estoppel."); *In re State of N.Y. Office of Mental Health*, 46 A.D.3d 1269, 1271 (3d Dep't 2007); *In re Capoccia*, 272 A.D.2d 838, 847 (3d Dep't 2000).

appears on the title affidavit representing that he is capable of encumbering 2141 Lenox Avenue. Commonwealth's attorney and a Commonwealth executive have sworn that the document is a true and correct copy of the title affidavit executed and delivered by Vargas to Vanguard. (Tyler Decl. ¶ 20; Decl. of Anthony Medina dated May 2, 2013 ¶¶ 4-5, 8.) Vargas must provide some evidence that controverts it in order to create a genuine issue of fact.

In that regard, Vargas first offers what he purports to be evidence showing that he intended to purchase, rezone, and develop the 2141 Lenox Avenue property: two letter proposals addressed to Vargas from architects and environmental analysts regarding the 2141 Lenox Avenue property (Def.'s Op. 43-54); an invoice from an attorney charging him for services rendered in connection with the "21 Lenox Avenue" matter (*id.* at 55); and a document describing a mortgage issued by Duran to Vargas Realty Group for a property in Flushing, New York (*id.* at 57). None of this evidence—particularly not the unsworn document claiming the existence of a mortgage on a completely different piece of land—controverts Commonwealth's evidence demonstrating that Vargas made misrepresentations to it about his interest in 2141 MD and the 2141 Lenox Avenue property in furtherance of his scheme to defraud. In fact, Skyllas described in his deposition testimony Vargas's use of some of the documents discussed above to convince Skyllas to invest in 2141 Lenox Avenue. (Skyllas Dep. 61:15-25.)

Defendant also claims a genuine dispute of fact exists with regard to the legitimacy of the title affidavit, which he asserts is forged. Vargas contends that he never signed the document and has never met the notary public who affirmed his signature on it. He accuses that notary, Jesser Jimenez, of fraudulently affirming a false signature and points out that the notary is a former employee of Skyllas. (*See* Skyllas Dep. 156:4-16.) Vargas also claims that it was Skyllas and his attorney who delivered the title affidavit to Commonwealth at the closing. The only evidence Vargas offers in support of these allegations is a letter he sent to the New York State Division of Licensing Services and Manhattan District Attorney Cyrus Vance in June 2012, in which Vargas purports to file a complaint against the notary who attested to Vargas's signature on the title affidavit. (Def.'s Opp. 39.) This letter, however, is nothing more than Vargas's self-same, unsupported assertions in a different forum; it is not admissible evidence supporting his contention that he never signed the fraudulent title affidavit. And the facts that the notary who witnessed Vargas's signature on the title affidavit was Skyllas's employee and that the title affidavit was delivered by Skyllas and his attorney, without more, do not call into question the document's authenticity.

Without any evidence apart from Vargas's unsupported statements that he did not sign the title affidavit, no genuine issue of material fact exists on that issue. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986) (the nonmoving party

"must present affirmative evidence in order to defeat a properly supported motion for summary judgment"); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F. 3d 14, 18 (2d Cir. 1995); *Levi*, 2011 WL 4542904, at *4 ("[C]ontentions without evidence cannot defeat summary judgment.").

The evidence submitted uniformly supports the version of the facts set forth in Section I of this opinion. Defendant's proffer of his own unverified claims—certain of which are barred by collateral estoppel and others of which simply contradict his prior sworn statements—is insufficient to contravene this evidence. *See D'Amico*, 132 F.3d at 149. The Court therefore finds that no genuine dispute of fact exists and proceeds to consider whether the facts presented support Commonwealth's claims.

### C.   Vargas Is Liable to Commonwealth for Common Law Fraud

Commonwealth's primary cause of action against Vargas—and the one to which it devotes the majority of its memoranda of law—is for common law fraud. Because all events relevant to this litigation took place in New York, New York law governs. "In New York a plaintiff alleging fraud must show by clear and convincing evidence that the defendant knowingly or recklessly misrepresented a material fact, intending to induce the plaintiff's reliance, and that the plaintiff relied on the misrepresentation and suffered damages as a result." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007). As explained above, the facts clearly demonstrate that Vargas knowingly misrepresented material facts about his relationship to 2141 MD and the 2141 Lenox Avenue property. The Court now considers whether the evidence supports the remaining elements of Commonwealth's fraud claim. Vargas contends Commonwealth fails to demonstrate both that Vargas intended to induce it to rely on his misrepresentations and that such reliance was reasonable.[4]

---

[4] Vargas claims that Commonwealth should be judicially estopped from arguing that Vargas's misrepresentations caused Commonwealth's loss because, in defending itself from the suit brought by Levi, Commonwealth argued that Vargas's fraud did not cause Levi's loss. However, this Court rejected Commonwealth's argument in its entirety and ruled against it on summary judgment. *Levi*, 2011 WL 4542904, at *3-4. Because Commonwealth is not attempting to assert a position contrary to an argument it prevailed upon earlier in this litigation, the doctrine of judicial estoppel is inapplicable. *See, e.g., Stewart v. Chautauqua Cnty. Bd. of Elections*, 14 N.Y. 3d 139, 149-50 (2010); *Olszewski v. Park Terrace Gardens, Inc.*, 18 A.D.3d 349, 350-51 (1st Dep't 2005) ("The doctrine of judicial estoppel does not apply here because . . . the verdict against [defendants] cannot be considered a ruling in their favor.").

Vargas also argues that Commonwealth failed to plead fraud with particularity; this Court denied defendant's motion to dismiss on this ground in an oral opinion issued December 19, 2012. (Tr. at 9-10, Dkt. No. 157.) This action has progressed far beyond the pleading phase.

### 1. *Vargas Intended to Induce Commonwealth's Reliance*

Defendant claims that Commonwealth has not demonstrated that he possessed an intent to defraud Commonwealth, Vanguard, or Levi—only Skyllas.

Pursuant to New York law, even knowingly false representations do not support a claim of fraud "unless made with the intent to be communicated to the persons or class of persons who act upon it to their prejudice." *Ultramares Corp. v. Touche*, 255 N.Y. 170, 187 (1931). The plaintiff must present facts demonstrating "that the defendant was aware that its misrepresentations would be reasonably relied upon by the plaintiff, not that the defendant intended to induce the particular acts of detrimental reliance ultimately undertaken by the plaintiff." *Houbigant, Inc. v. Deloitte & Touche LLP*, 303 A.D.2d 92, 100 (1st Dep't 2003). The false representation may be made to a third party, provided the plaintiff's eventual reliance was intended. *Buxton Mfg. Co. v. Valiant Moving & Storage, Inc.*, 239 A.D.2d 452, 454 (2d Dep't 1997).

Here, Commonwealth has produced the title affidavit, in which Vargas made written misrepresentations, verified by his notarized signature, that he specifically acknowledged were to be relied upon by Commonwealth. Indeed, this document included statements such as "I [Vargas] am the Managing Member of 2141 MD" and that 2141 MD "is mortgaging the premises known as 2141 Lenox Avenue . . . to Larry Levi." (Title Affidavit.) It attested to the existence of the articles of organization and the ongoing validity of the operating agreement. (*Id.*) It also stated, in bold capital letters, that "THIS AFFIDAVIT IS EXECUTED TO INDUCE COMMONWEALTH TO ISSUE ITS POLICY OF TITLE INSURANCE COVERING SAID PREMISES . . . KNOWING THAT IT WILL RELY UPON THE STATEMENTS HEREIN MADE." (*Id.*)

Vargas has raised no genuine dispute about this document's authenticity. Although there is no evidence that Vargas himself delivered this document to Commonwealth or had any personal interaction with any Commonwealth representative, it is of no moment; a misrepresentation does not have to be made directly to a plaintiff for that plaintiff's reliance to be intended. *See Buxon Mfg. Co.*, 239 A.D.2d at 454. Therefore, Commonwealth has demonstrated that Vargas intended to induce its reliance upon his misrepresentation that he was a majority stakeholder in 2141 MD and had the ability to encumber the 2141 Lenox Avenue property.

### 2. *Commonwealth's Reliance upon Vargas's Misrepresentations Was Reasonable*

Vargas also contends that Commonwealth's reliance on the operating agreement and title affidavit was unreasonable. He asserts that Commonwealth is a sophisticated business and the fraudulent nature of the documents should have been

apparent to, or easily discovered by Commonwealth through standard investigation.[5]

Although it is true that "New York courts are generally skeptical of claims of reliance asserted by 'sophisticated businessmen engaged in major transactions [who] enjoy access to critical information but fail to take advantage of that access,'" *Merrill Lynch & Co.*, 500 F.3d at 181 (quoting *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984)), the New York Court of Appeals has written pellucidly that:

> Where, however, a plaintiff has taken reasonable steps to protect itself against deception, it should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred. In particular, where a plaintiff has gone to the trouble to insist on a written representation that certain facts are true, it will often be justified in accepting that representation rather than making its own inquiry.

*DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y. 3d 147, 154 (2010). "In assessing whether reliance on allegedly fraudulent misrepresentations is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision." *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004).

Here, Commonwealth obtained a written statement, verified by notarized signature, confirming the representations in the operating agreement and other documents upon which it and Vanguard relied in issuing the title insurance policy to Levi. The title affidavit included specific affirmations about 2141 MD's articles of organization and operating agreement: that "[t]here has been no change in the composition of [2141 MD] and that this Operating Agreement has not been amended nor repealed and remains in full effect." (Title Affidavit.) Although a more thorough investigation by Vanguard into the operating agreement or 2141 MD's articles of

---

[5] Vargas bases these arguments upon a report commissioned by Commonwealth in which a paid consultant—William A. Colavito, Esq., an attorney specializing in real property and title insurance issues—opined that Vanguard's investigation of the mortgage had failed to meet title industry standards. (Def.'s Opp. 24-34.) Colavito observed that Vanguard had not discovered inconsistencies between the operating agreement Vargas had created and 2141 MD's articles of organization, or internal defects in the operating agreement itself. Although unsworn expert reports are generally insufficient to raise an issue of material fact in opposition to a motion for summary judgment, *see Capobianco v. City of N.Y.*, 422 F.3d 47, 55 (2d Cir. 2005), Vargas does not appear to be referencing the report for this purpose. Rather, Vargas's mention of this report seems intended to bolster his legal argument as to whether reliance was reasonable—a proper inquiry for the Court.

organization might have exposed Vargas's fraud prior to Commonwealth's issuance of the title insurance policy, Commonwealth's reliance on Vargas's written representation that the facts upon which it based its issuance of the policy were true was not unreasonable. The title affidavit therefore provides evidence sufficient to satisfy this element of a common law fraud claim.

### 3.   Commonwealth Suffered Damages as a Result of Vargas's Fraud

A defendant who has committed common law fraud is "liable for the harm caused by the other's justifiable reliance upon the misrepresentation." *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 407 (1958). "Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996). "[A] plaintiff must demonstrate that a defendant's misrepresentations were the direct and proximate cause of the claimed losses." *Friedman v. Anderson*, 23 A.D.3d 163, 167 (1st Dep't 2005).

Commonwealth has demonstrated to the Court's satisfaction that it issued the title insurance policy based upon its reasonable reliance on Vargas's fraudulent representations. Commonwealth ended up compensating Levi in the full amount of the policy—$1 million—plus an additional $122,500. The additional amount represents a discount, as per Commonwealth's agreement with Levi, from the original $184,684.93 this Court ordered Commonwealth to pay in damages and prejudgment interest. This result was the natural consequence of causing an insurance company to issue a policy guaranteeing a fraudulent mortgage: for the company to have to pay the insured when the fraud is discovered. Commonwealth's losses—and the compensation needed to make it whole—are therefore equal to the $1,122,500 it paid Levi, less amounts otherwise recovered by Commonwealth as compensation for this injury. Commonwealth is also entitled to postjudgment interest and costs, but not to an award of attorney's fees.[6]

### D.   The Court Need Not Consider Commonwealth's Alternative Theories of Liability

As noted above, Commonwealth has offered two alternative legal theories on which it claims it may be entitled to recovery against Vargas: conspiracy to commit fraud and as Levi's subrogee of any rights he could assert against Vargas pursuant to Levi's purchase of the note and mortgage. With respect to the conspiracy to commit fraud claim, Commonwealth seeks the exact damages the Court has

---

[6] Commonwealth is statutorily entitled to postjudgment interest pursuant to New York C.P.L.R. § 5003 and its costs pursuant to New York C.P.L.R. § 8101 as the prevailing party. However, it has provided no basis to support its request for attorneys' fees; the Court therefore declines to award such compensation.

determined it is owed based on its fraud cause of action. With respect to the subrogation claims, Commonwealth seeks compensation of $1 million—the amount due to Levi pursuant to the mortgage note. Pursuant to both of these theories, Commonwealth seeks compensation for the same injury for which this Court has already determined it is entitled to an award of compensatory damages. The Court has therefore awarded Commonwealth all the relief due. For this reason, the Court need not consider the alternative theories for awarding plaintiff compensation as a result of Levi enforcing the $1 million title insurance policy.

### E.   The Court Declines to Award Punitive Damages

Commonwealth asserts that it is entitled to $10 million in punitive damages in addition to compensatory damages. It claims that such exemplary damages are warranted because Vargas's fraud was aimed at numerous victims,[7] and was therefore a public wrong, and because it evinces a high degree of moral culpability.

"[U]nder New York law, punitive damages are not a separate cause of action," but rather are "inextricably linked to the underlying cause of action."*Greenbaum v. Svenska Handelsbanken, N.Y.*, 979 F. Supp. 973, 982 (S.D.N.Y. 1997) *on reconsideration sub nom. Greenbaum v. Handlesbanken*, 26 F. Supp. 2d 649 (S.D.N.Y. 1998). "Imposition of punitive damages is discretionary, not mandatory." *Birnbaum v. Birnbaum*, 157 A.D.2d 177, 192 (4th Dep't 1990). "Punitive damages are not to compensate the injured party but rather to punish the tortfeasor and to deter this wrongdoer and others similarly situated from indulging in the same conduct in the future." *Ross v. Louise Wise Servs., Inc.*, 8 N.Y. 3d 478, 489 (2007). Such damages are "refused in the 'ordinary' fraud and deceit case." *Walker v. Sheldon*, 10 N.Y.2d 401, 405 (1961).

There is some division in authority within the Appellate Divisions as well as within the U.S. district courts as to what elements must be demonstrated for punitive damages to be available in a fraud case. It is clear that a plaintiff seeking punitive damages must show (1) that he was the victim of an independent tort, *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994), and (2) that the defendant's tortious conduct "evinced a high degree of moral turpitude and . . . wanton dishonesty," *Walker*, 10 N.Y.2d at 405. The dispute is over whether the plaintiff must also demonstrate that the fraud was aimed at the public generally. *Compare N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 315-16 (1995), *Rocanova*, 83 N.Y.2d at 615 (referring to the "public wrong requirement as a limitation on the

---

[7] During his plea allocution, Vargas also admitted to attempting to defraud the New York Road Runners in regard to the same property. (Plea Allocution at 10-11.) Additional plaintiffs have filed a civil suit against Vargas, claiming to have been defrauded in the same manner described here, also in connection with the 2141 Lenox Avenue property. *See Mateo v. Vargas*, No. 602043/2009, 2012 N.Y. Misc. LEXIS S19 (N.Y. Sup. Ct. Feb. 1, 2012).

availability of punitive damages where a cause of action in fraud was stated"), *and Walker*, 10 N.Y.2d at 405, *with Borkowski v. Borkowski*, 39 N.Y.2d 982, 983 (1976) ( "I]t is not essential . . . that punitive damages be allowed in a fraud case only where the acts had been aimed at the public generally.").

The Court believes that the better position is that the fraud must be aimed at the general public in order for punitive damages to be awarded. *Accord Mayline Enters. v. Milea Truck Sales Corp*, 641 F. Supp. 2d 304, 311 (S.D.N.Y. 2009). To the extent the New York Appellate Divisions or federal courts have stated that such a showing is unnecessary, they rely largely on *Borkowski v. Borkowski*, a one-sentence memorandum decision. 39 N.Y.2d at 983. *Borkowski*, however, has never been cited by the New York Court of Appeals for any purpose whatsoever, and certainly not for the proposition that punitive damages may be awarded in the absence of harm to the public. Moreover, unlike *New York University*, *Rocanova*, and *Walker*, *Borkowski* is simply a "memorandum" disposition, not a full opinion; it is separately designated as such and placed in the "Memoranda" section of the hardbound version of the New York Reports, the official reports of the New York State Reporter. *See* 39 N.Y.2d 717 (denoting a separate section for "Memoranda of Decisions Rendered during the Period Embraced in this Volume" rather than "Opinions"). For this reason, and because later New York Court of Appeals opinions support the view that a fraud must be aimed at the public generally to support an award of punitive damages, *see New York University*, 87 N.Y.2d at 315-16; *Rocanova*, 83 N.Y.2d at 613-15, this Court adheres to that requirement.

Here, the undisputed facts do not support an award to Commonwealth of $10 million in exemplary damages. Although Vargas's conduct was certainly culpable, this action represents a standard, rather than exceptional, fraud case. Plaintiff has demonstrated that the fraud affected several actors, but it has not convinced the Court that Vargas's actions were so far-reaching as to have been "aimed at the public generally." *See Walker*, 10 N.Y.2d at 405. Instead, the record shows, at most, that the affected were a handful of individuals and an organization interested in purchasing a single property located at 2141 Lenox Avenue. Moreover, an additional award of damages is unnecessary for the purposes of punishment and deterrence. Vargas has suffered punishment indeed through his criminal conviction and the sentence of incarceration he is currently serving. Therefore, the Court denies Commonwealth's request for punitive damages.

## III. CONCLUSION

As set forth above, Vargas has failed to demonstrate the existence of any genuine dispute of material fact, and Commonwealth has established that, as a matter of law, Vargas is liable to it for common law fraud. Plaintiff's motion for summary judgment is therefore granted, and it is hereby awarded damages in the

amount of $1,122,500, jointly and severally with the other third-party defendants as compensation for this injury, as well as postjudgment interest and costs. (Dkt. No. 173.) The Court declines to award punitive damages. This disposition resolves Commonwealth's action against Vargas in its entirety.

Dated:  New York, New York
        October 21, 2013

SO ORDERED:

Sidney H. Stein, U.S.D.J.

15